UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALENTINA MAXWELL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KIRSTJEN NIELSEN, Secretary, U.S. Dept. of Homeland Security, *et al.*,<br><br>　　　　　Defendants. | No. 2:14-cv-02772-TLN-AC<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

　　　　Plaintiff Valentina Maxwell ("Plaintiff"), proceeding pro se, filed the instant action on November 25, 2014, seeking naturalization pursuant to 8 U.S.C. § 1447(b). Section 1447(b) grants the district court jurisdiction to conduct a hearing and make a determination on a naturalization application when the United States Citizenship and Immigration Services ("USCIS") has failed to act on an application within 120 days of the applicant's interview. Pursuant thereto, this Court held a one-day bench trial on April 8, 2019. After a thorough review of the entire record the Court issues the following findings of fact and conclusions of law and DENIES Plaintiff's application for naturalization. Consequently, Plaintiff's Motion for Stay of Removal (ECF No. 95) is DENIED as moot.

　　　　Also pending before the Court is the government's Motion to Dismiss filed August 7, 2019, after conclusion of the bench trial and after the parties' submitted proposed findings of fact

and conclusions of law. (ECF No. 94.) Defendants have not specified the standard or legal grounds for their motion. Such a motion made during or after a bench trial, however, is not brought under Federal Rule of Civil Procedure ("Rule") 12(b)(6) or under Rule 41(b). Rather — at least in this case — it seems the government has raised the bench-trial equivalent of a motion for judgment as a matter of law made under Rule 50(a) in a jury trial. In a bench trial, that motion is governed by Rule 52(c), and the Court construes the government's motion as such.[1] Alternatively, the Court could construe the government's motion as post-trial supplemental briefing. In any event, the Court has reviewed and fully considered the government's motion, Plaintiff's Opposition thereto (ECF No. 97) and the government's subsequent Reply (ECF No. 100). To the extent the government's Motion seeks to provide an additional argument that Plaintiff is ineligible for naturalization and so her application should be denied, the Motion is GRANTED. In all other respects, it is DENIED as moot.

Having considered the submissions by the parties, trial testimony, and all admissible evidence, the Court hereby enters its Findings of Fact and Conclusions of Law in conformity with Rule 52.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court will not recount the entire factual and procedural background here, with which the parties are familiar. As is relevant to the present status of this case, however, the Court notes that the following is undisputed:

Plaintiff was a lawful permanent resident when she applied for naturalization in July 2013. In October 2013, she was interviewed by USCIS and was thereafter scheduled to attend an oath ceremony to complete her naturalization. USCIS cancelled the ceremony and instead issued a Request for Evidence to which Plaintiff responded in November 2013. In March 2014, USCIS officers conducted a field investigation and asked Plaintiff additional questions pertaining to her naturalization; in May Plaintiff submitted additional documents to USCIS. Plaintiff filed the

---

[1] If a district court grants a Rule 52(c) motion at the close of the evidence, the court must enter judgment in favor of the moving party and make findings of fact as provided under Rule 52(a).

present action before this Court in November 2014, because she had yet to receive a determination on her naturalization application.

In December 2014, Plaintiff was referred by USCIS into removal proceedings. She was ordered removed in May 2017, and thereafter filed a motion for reconsideration before the Immigration Judge, which the judge denied on November 1, 2017. Meanwhile, the present action proceeded, culminating in a one-day bench trial before this Court on April 8, 2019. The parties thereafter submitted proposed findings of fact and conclusions of law for the Court's consideration. (ECF Nos. 88–89.)

The matter remained submitted before the Court, and on July 26, 2019, the Board of Immigration Appeals dismissed Plaintiff's appeal of the Immigration Judge's November 1, 2017 removal order (ECF No. 92). In light of that development, Defendants filed a Motion to Dismiss on August 7, 2019. (ECF No. 94.) The motion asserts that because Plaintiff is now subject to a final removal order, she no longer has permanent resident status and so is ineligible for naturalization. (*Id.* at 4.) Plaintiff thereafter filed a Motion to Stay her Removal (ECF No. 95), and opposed Defendants' Motion to Dismiss (ECF No. 97). Defendants have opposed Plaintiff's request for stay (ECF No. 98), and each party has filed a respective reply (ECF Nos. 100, 103). Subsequently, on October 29, 2019, Plaintiff filed a status report indicating that she has filed a motion to reopen with the BIA based on new evidence. (ECF No. 104.) It seems Plaintiff's argument is that the act of filing a motion to reopen before the BIA postpones the finality of her removal order. (*Id.* at 1.)

After reviewing all relevant material, the Court makes the following findings of fact and conclusions of law which dispose of this matter in its entirety, including the pending motions.

**II.   FINDINGS OF FACT**

The Court makes the following findings of fact based on the evidence presented at trial, the facts stipulated to by the parties, and all post-trial briefing, as cited herein.

///

///

///

1        1.      Plaintiff is a native and citizen of Russia.  (Undisputed Fact No. 1.[2])

2        2.      She entered the United States on an F-1 student visa on or about September 9, 2009, stating that she intended to stay in the United States for three months; the purpose of her trip was noted as "education."  (Undisputed Fact No. 2; Def. Ex. K.)

3.      On her Nonimmigrant Visa Application, Plaintiff provided she was married to Konstantin Shabanov.  (Undisputed Fact No. 3; Def. Ex. K.)

4.      On her Nonimmigrant Visa Application, Plaintiff provided that her surname was "Shabanova," and under "Other Surnames Used" (including maiden) listed "Titova."  (Def. Ex. K.)

5.      Plaintiff married Ryan Maxwell, a United States citizen, on or about November 21, 2009, in Solano County, California.  This was within three months of her entering the United States on her F-1 student visa.  (Undisputed Fact No. 4; Def. Ex. G.)

6.      On her Solano County marriage certificate, Plaintiff did not check any of the boxes that would indicate she had been in a prior marriage.  (Def. Ex. G; Trial Tr. at 67.)

7.      On or about June 9, 2010, Ryan Maxwell submitted an I-130 Petition for Alien Relative to USCIS on Plaintiff's behalf, seeking to have her classified as the spouse of a United States citizen.  (Def. Ex. F; Undisputed Fact No. 5.)

8.      Also, on or about June 9, 2010, Plaintiff submitted an I-485 Application to Register Permanent Residence or Adjust Status (also known as a "Green Card" application).  (Def. Ex. C; Undisputed Fact No. 5.)

9.      The I-130 Petition for Alien Relative indicates Plaintiff had no prior spouse(s).  (Def. Ex. F.)

10.     In Plaintiff's G-325A Biographic Information filed in support of her application for permanent resident status, Plaintiff responded "None" in response to a section in the

---

[2] At trial, Plaintiff stipulated to the undisputed facts set forth in the Defendants' Pretrial Statement (ECF No. 79-1).  (Trial Tr., ECF No. 87 at 7.)  Those facts are cited herein as "Undisputed Facts."

application asking her to list "Former Husbands or Wives." (Def. Ex. D; Trial Tr. 58; Undisputed Fact No. 6.)

11. In the same G-325A Biographic Information, Plaintiff indicated that Shabanova was the only last name she ever used. (Def. Ex. D; Trial Tr. at 57.)

12. Plaintiff submitted a birth certificate in support of the I-130 Petition and I-485 Application wherein she lists her last name as Shabanova. (Def. Ex. E; Trial Tr. at 60-61; Undisputed Fact No. 6.)

13. On or about October 12, 2010, USCIS approved Plaintiff's I-130 petition and I-485 application and adjusted Plaintiff's status to conditional legal permanent resident. (Def. Exs. C, F; Undisputed Fact No. 8.)

14. This favorable adjudication was made in error, as Plaintiff was ineligible to adjust status based on her marriage to Ryan Maxwell because she was still married to Konstantin Shabanov.

15. USCIS Officer Bennett testified that he could not recall whether the F-1 visa application that truthfully revealed Plaintiff's marriage to Shabanov was in Plaintiff's A-File at the time he reviewed Plaintiff's application for naturalization. Officer Bennett appears to have relied on the representations made in Plaintiff's I-485 application that Plaintiff had no former husbands. (Trial Tr. 44–47.)

16. The Court finds Plaintiff therefore obtained conditional permanent resident status by concealing her marriage to Shabanov. Indeed, Plaintiff affirmatively misrepresented that she had no other marriages.

17. USCIS removed the conditions on residence on April 11, 2013, making Plaintiff a lawful permanent resident. (Def. Ex. B.)

18. Plaintiff submitted an N-400 Application for Naturalization to USCIS on or about July 11, 2013, seeking United States citizenship. (Def. Ex. A; Undisputed Fact No. 9.)

19. On her sworn N-400 Application for Naturalization, Plaintiff was asked: "How many times have you been married (including annulled marriages)?" Plaintiff responded: "1." (Def. Ex. A at 4; Undisputed Fact Nos. 10, 11.)

5

1        20.     On her sworn N-400 Application for Naturalization, Plaintiff was asked to list any other names she had used. Plaintiff listed only one other name: Shabanova. (Def. Ex. A at 1; Trial Tr. at 39.)

         21.     The N-400 Application for Naturalization directs the applicant to provide information about prior marriages and spouses, including the spouse's full name and immigration status, the date of marriage, and the date and how the marriage ended. Plaintiff indicated only "N/A." (Def. Ex. A.)

         22.     In short, Plaintiff included no information regarding Konstantin Shabanov or her marriage to him on her N-400 Application. (*See* Def. Ex. A.)

         23.     The USCIS Officer who conducted Plaintiff's naturalization interview was Rashidi Bennett. (Trial Tr. at 37–38.)

         24.     Officer Bennett credibly testified that he places applicants under oath prior to conducting the naturalization interview. (Trial Tr. at 51.)

         25.     Officer Bennett credibly testified that there is a requirement for applicants to provide truthful information, start to finish, on their naturalization applications. (Trial Tr. at 40-41.)

         26.     Officer Bennett credibly testified that is important for an applicant to disclose prior marriages for at least two reasons: (1) a person is not eligible for naturalization if he or she is married to more than one person at the same time; and (2) prior marriages can be an indication of potential fraud in a naturalization application. (Trial Tr. at 42–43.)

         27.     Officer Bennett credibly testified that if Plaintiff had disclosed a prior marriage, he would have looked into: (1) whether Plaintiff was already married at the time she married her United States citizen spouse; and (2) whether Plaintiff was only marrying her United States citizen spouse to gain an immigration benefit and would then leave her United States citizen spouse in order to return to her former Russian spouse. (Trial Tr. at 46.)

         28.     At the naturalization interview, Plaintiff swore everything in the N-400 Application was true. (Def Ex. A; Trial Tr. 50-51.)

29. Officer Bennett credibly testified that if Plaintiff was already married at the time she married Ryan Maxwell, she would have been inadmissible and ineligible to adjust her status to lawful permanent resident.  (Trial Tr. at 47.)

30. Officer Bennett credibly testified that at the conclusion of the naturalization interview he had concerns about Plaintiff's marriage to Ryan Maxwell.  Accordingly, although Officer Bennett stamped the naturalization application for approval, he continued to investigate her case. (Trial Trans. At 74–78.)  Ultimately, he referred the matter to USCIS's Fraud Detection and National Security ("FDNS") unit for further investigation prior to the swearing in ceremony.  (Trial Tr. at 82.)

31. On or about March 20, 2014, two immigration officers from FDNS, Nai Saelee and June Faraimo, visited Plaintiff at her home to ask her questions about her naturalization application.  (Trial Tr. at 83–84.)

32. Officer Saelee credibly testified that during the visit, Officer Saelee asked Plaintiff if she knew the name "Konstantin," and Plaintiff responded "No."  Officer Saelee then asked Plaintiff if she knew the name "Konstantin Shabanov," and Plaintiff again responded "No."  Officer Saelee provided Plaintiff with Konstantin Shabanov's birthdate, and Plaintiff indicated she did not know who Konstantin Shabanov was.  (Trial Tr. at 92.)

33. Officer Saelee credibly testified that he then showed Plaintiff a photograph of Konstantin Shabanov and asked whether she recognized the person in the photo.  Plaintiff responded "No."  (Trial Tr. at 93.)

34. Officer Saelee credibly testified that at this point in the site visit, Plaintiff's demeanor visibly changed.  Specifically, at the outset of the interview Plaintiff was cooperative and forthcoming with information, but she became antsy when confronted with questioning about Konstantin Shabanov and began bouncing on the bed she was sitting on during the interview.  (Trial Tr. at 93-94.)

35. Plaintiff maintained to Officer Saelee that she did not know Konstantin Shabanov and that she had never been married to him.  (Trial Tr. at 94.)

7

36. Plaintiff further stated that she had never been married before and that she had only been married to Ryan Maxwell. (Trial Tr. at 94.)

37. On or about December 22, 2014, the Department of Homeland Security placed Plaintiff in removal proceedings via a Notice to Appear charging her with removability under § 237(a)(1)(A) of the Immigration and Nationality Act for having obtained approval of her I-485 Application by fraud or willful misrepresentation in violation of 8 U.S.C. § 212(a)(6)(C)(i). (Def. Ex. P.[3])

38. A removal hearing was held on November 18, 2016, in Immigration Court. (Def. Ex. R at 49–94; Undisputed Fact No. 17.[4])

39. On December 1, 2016, Ryan Maxwell submitted to USCIS a new I-130 Petition for Alien Relative on Plaintiff's behalf. (Undisputed Fact No. 20; Def. Ex. L.)

40. This new I-130 Petition discloses not one, but two prior spouses of Plaintiff: Konstantin Shabanov and Vadim Yanchuk. (Undisputed Fact No. 21; Def. Ex. L.)

41. The petition indicates that Plaintiff's marriage to Shabanov ended on November 15, 2008, and was "void." The petition also indicates that Plaintiff's marriage to Yanchuk ended on November 27, 2007, and was "invalid." (Undisputed Fact No. 22; Def. Ex. L.)

42. On May 25, 2017, the Immigration Judge ordered Plaintiff removed on the ground that she had obtained approval of her I-485 Application by fraud or willful misrepresentation in violation of 8 U.S.C. § 1182(a)(6)(C)(i). (Def. Ex. P.) The same order denied Plaintiff's application for a waiver of inadmissibility under § 237(a)(1)(H) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(H). (Def. Ex. P.)

43. Plaintiff did not appeal the Immigration Judge's decision to the Board of Immigration Appeals, and instead filed a motion for reconsideration of the removal order before the Immigration Judge. (Undisputed Fact No. 19). When that motion was denied on November

---

[3] The government's Request for Judicial Notice contained within its Proposed Findings of Fact (ECF No. 89) is GRANTED. The Court hereby takes judicial notice of Defendants' Exhibit P, the May 25, 2017 Order and Decision of the Immigration Judge in Plaintiff's removal proceedings.

[4] Undisputed Fact No. 17 lists the date of the removal hearing as November 17, 2016; this appears to be a typo.

1, 2017, Plaintiff filed an appeal of the denial of her motion to reconsider with the Board of Immigration Appeals ("BIA").  (*Id.*)

44.     On July 26, 2019, the BIA dismissed Plaintiff's appeal of the November 1, 2017 removal order.  (ECF No. 92-1.)

45.     On October 29, 2019, Plaintiff informed this Court that she had timely filed a Motion to Reopen her appeal before the BIA.  (ECF No. 104.)[5]

46.     At the bench trial, USCIS Officer Iryna Kline testified that she contacted Konstantine Shabanov and asked him to provide documents relevant to his Russian divorce proceedings.  (Trial Tr. at 136; Def. Ex. V.)

47.     In response, Mr. Shabanov provided Officer Kline with certain documents, including a copy of the Excerpt of Decision regarding the dissolution of marriage, noting the decision "entered into force" September 27, 2011, as well as a copy of the full decision.  (Trial Tr. at 136, 149; Def. Exs. W and AA.)

48.     Additionally, Officer Saelee credibly testified that he received a copy of the Russian divorce decree from CBP Officer Aguilar, who received it from Mr. Shabanov.  (Trial Tr. at 110; Def. Ex. X at 4.)

49.     Officer Kline testified that she conducted online open source research into the documents Plaintiff submitted in connection with her application.  (Trial Tr. at 125-127; Def. Exs. S, N.[6])

50.     Officer Kline testified that she undertook this research because USCIS now had two different sets of documents, inconsistent with each other, that purported to be genuine Russian court documents.  (Trial Tr. at 126-127; Def. Exs. N, S, X, W, AA.[7])  Specifically, the

---

[5]     The government has argued the dismissal of Plaintiff's appeal renders her order of removal final, making her ineligible for naturalization and providing another ground for this Court to deny her application.  (ECF No. 94)  The Court is uncertain of the impact of Plaintiff's motion to reopen her appeal on the finality of her removal order.  The Court, however, need not make an ultimate determination on this issue as Plaintiff is otherwise not eligible for naturalization as set forth in these Findings of Fact and Conclusions of Law.

[6]     The Court admitted Exhibit S, pages 2–10 at trial, and therefore only considers those pages herein.  (Trial Tr. at 126.)

[7]     Similarly, the Court admitted only pages 1, 2, and 4 of Exhibit X and consider only those herein.  (Trial Tr. at 104–105, 109.)

1  version of the marriage termination documents submitted by Plaintiff purported to show that the
2  marriage was dissolved in 2009. (Def. Exs. S, N.) The version sent by Shabanov showed that the
3  marriage was terminated by divorce in 2011. (Def. Ex. W, X, AA.)

4  51.  Officer Kline testified that Russian is her native language and she speaks fluent
5  Russian. (Trial Tr. at 125.) Officer Kline searched the website of the Russian court that
6  purportedly issued the marriage dissolution — Judicial District Number 82 in the city of
7  Novorossiysk. She testified that she searched by case number and found an entry in the year
8  2011 indicating that the marriage of Konstantin Shabanov and Plaintiff was dissolved on
9  September 16, 2011. (Trial Tr. at 127.)

10  52.  Officer Kline searched the court website for other corroborating information, and
11  found that the case was heard on September 16, 2011, at 10:00 am, by Judge Chigirin. (Trial Tr.
12  at 133.)

13  53.  Officer Kline compared the results of her online research to the version of the
14  dissolution submitted by Shabanov and found the following corroborating information: the date
15  (September 16, 2011) matched, the case number (2-1369/2011-82) matched, the judge's name
16  (Chigirin) matched, and the names of the petitioner and the respondent matched. (Trial Tr. at
17  134; Def. Ex. AA.)

18  54.  Officer Kline testified that she was not able to conduct the same research for the
19  year 2009 because the court database only had information beginning in 2010. (Trial Tr. at 135.)

20  55.  At the bench trial, Defendants presented testimony from Eduard Hairullin, a
21  professional Russian language interpreter and translator who was tendered as an expert without
22  objection from Plaintiff. (Trial Tr. at 175.) Mr. Hairullin was received as an expert. (Trial Tr. at
23  175.)

24  56.  Mr. Hairullin testified that that the operative language in the 2011 Russian divorce
25  decree is as follows: "The marriage between Shavanov, Konstantine Yurievich and Shabanova
26  (Titova), Valentina Sergeyevna, registered on 11/15/2008 by the Office of Vital Records and
27  Registry of the city of Novorossiysk of the Region of Krasnodar, vital record Number 2163, be
28  dissolved." (Trial Tr. at 179; Def. Ex. AA.)

57. Mr. Hairullin credibly testified that there is no language in the decree indicating that the marriage was "null and void." (Trial Tr. at 180.)

58. Plaintiff conceded that "I believe this interpreter is interpreting everything correct, and I do not have any problems towards the interpreter." (Trial Tr. at 185-186.)

59. Plaintiff did not submit an exhibit list or witness list and indicated at trial that she wished to "stand on the exhibits attached to the motion for summary judgment." (Trial Tr. at 31.) Plaintiff's direct testimony consisted exclusively of an attempt to explain why she submitted two different birth certificates — one in support of her I-485 Application (which listed her father's last name as Shavbanov) and a different one in support of the 2016 I-130 Petition (which listed her father's last name as Titov). (Trial Tr. at 192-94.) Plaintiff called no other witnesses. (Trial Tr. at 195.)

60. The Court finds Plaintiff is not a credible witness and specifically finds her explanation of the reason for the two birth certificates to be not credible.

61. The Court finds that 2011 Divorce Decree provided to the Court by the government (Def. Ex. AA) is authentic and the 2009 Divorce Decree provided to the Court by the Plaintiff (Def. Ex. N) is not authentic.

62. The Court finds that Plaintiff was married to Konstantin Shabanov at the time she married Ryan Maxwell.

63. Further, the Court finds that even if Plaintiff's marriage to Konstantin Shabanov had ended prior to her marriage to Ryan Maxwell, Plaintiff nonetheless failed to disclose her prior marriage to the USCIS and that such non-disclosure was deliberate and intended to ensure that her I-485 Application would be granted.

64. The Court finds that Plaintiff failed to disclose her prior marriage to Vadim Yanchuk to the USCIS and that such non-disclosure was deliberate and intended to ensure that her I-485 Application would be granted.

65. The Court finds that Plaintiff willfully submitted two different birth certificates to USCIS for the purpose of seeking an immigration benefit, and that at least one of these birth certificates is fraudulent.

### III. CONCLUSIONS OF LAW

1. When USCIS fails to make a determination on an application for naturalization "before the end of the 120-day period after the date on which the examination is conducted under [8 U.S.C. § 1446], the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447(b).

2. The district court then "has [exclusive] jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b); *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004). Here, § 1447(b) therefore vested this Court with jurisdiction to grant or deny Plaintiff's naturalization application.

3. An applicant for naturalization has the burden of proving "by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the applicant was lawfully admitted as a permanent resident to the United States . . . ." 8 C.F.R. § 316.2(b).

4. The requirements for naturalization are set forth in 8 U.S.C. § 1427, which provides in relevant part:

> No person, except as otherwise provided in this subchapter, shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing his application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C. § 1427(a).

5. Under 8 U.S.C. § 1430(a), an applicant who is the spouse of a United States citizen must meet all the requirements for naturalization under 8 U.S.C. § 1427, with the exception that:

> if such person immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least three years [as opposed to five years as set forth in 8 U.S.C. § 1427], and during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse . . . ., who has been a United States citizen during all of such period, and has been physically present in the United States for periods totaling at least half of that time and has resided within the State or the district of the Service in the United States in which the applicant filed his application for at least three months.

8 U.S.C. § 1430(a).

6. "[S]trict compliance with all the congressionally imposed prerequisites to" citizenship is required. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).

7. "[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect." *INS v. Pangilinan*, 486 U.S. 875, 886 (1988). "[W]hen doubts exist concerning a grant of [citizenship], generally at least, they should be resolved in favor of the United States and against the claimant." *United States v. Manzi*, 276 U.S. 463, 467 (1928).

8. The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

9. "Lawfully admitted for permanent residence" is not merely a procedural requirement but a substantive one. *Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986).

10. The term "lawfully admitted for permanent residence" does not apply to aliens who obtained their permanent residence status by fraud. *Shin v. Holder*, 607 F.3d 1213, 1216-17 (9th Cir. 2010); *cf*. *Segura v. Holder*, 605 F.3d 1063, 1067 (9th Cir. 2010).

11. "Thus, an alien whose status has been adjusted to [lawful permanent resident] — but who is subsequently determined to have obtained that status adjustment through fraud — has not been 'lawfully admitted for permanent residence' because the 'alien is deemed, *ab initio*, never to have obtained [lawful permanent resident] status.'" *Gallimore v. Attorney General of the United States*, 619 F.3d 216, 223 (3d Cir. 2010) (quoting *In re Koloamatangi*, 23 I & N Dec. 548, 551 (BIA 2003)); *Saliba v. Attorney General of the United States*, 828 F.3d 182, 192 (3d Cir.

2016) (stating that an alien who obtains lawful permanent resident status "by fraud or willfully misrepresenting a material fact" is ineligible for naturalization) (quoting 8 U.S.C. § 1182(a)(6)(C)).

12. For purposes of determining admissibility, a misrepresentation is deemed "willful" if it was "deliberate or voluntary." *Espinoza-Espinoza v. INS*, 554 F.2d 921, 925 (9th Cir. 1977). "[T]here is no requirement that an intent to deceive must be shown." *Id.* at 925.

13. A material misrepresentation is one that is "predictably capable of affecting, i.e., ha[s] a natural tendency to affect, the official decision . . . whether the application meets the requirements for citizenship." *Kungys v. United States*, 485 U.S. 759, 771 (1988).

14. The materiality of the misrepresentation depends on "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." *Id.* at 771-72.

15. Plaintiff is ineligible for naturalization because she was not "lawfully admitted for permanent residence" within the meaning of 8 U.S.C. § 1427 and 8 U.S.C. § 1101(a)(20).

16. Plaintiff was not lawfully admitted for permanent residence because she obtained her lawful permanent resident status "by fraud or willfully misrepresenting a material fact" within the meaning of 8 U.S.C. § 1182(a)(6)(C).

17. Specifically, Plaintiff obtained her permanent resident status by fraudulently concealing on her I-485 Application and supporting materials that she was married to Konstantin Shabanov at the time she married Ryan Maxwell.

18. Moreover, even assuming Plaintiff was not married to Konstantin Shabanov at the time she married Ryan Maxwell, she willfully misrepresented to USCIS on her I-485 Application and supporting materials that she had never been previously married.

19. The Court finds Plaintiff has demonstrated a consistent pattern of fraud and deceit in her efforts to become a lawful permanent resident and a naturalized citizen. Plaintiff knowingly submitted falsified documents to the USCIS, the Immigration Court, and this Court.

20. The Court finds Plaintiff's testimony attempting to justify her two birth certificates not credible.

21. The Court therefore DENIES Plaintiff's application for naturalization.

## IV. CONCLUSION

For the reasons set forth above in the Court's Findings of Fact and Conclusions of Law, Plaintiff's application for naturalization is DENIED. To the extent the government's Motion to Dismiss (ECF No. 94) seeks to establish that Plaintiff is ineligible for naturalization and so her application should be denied, the Motion is GRANTED. In all other respects, it is DENIED as moot. Plaintiff's Motion for Stay of Removal (ECF No. 95) is DENIED as moot. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED: June 1, 2020

Troy L. Nunley
United States District Judge

15